*** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

 Electronically Filed
 Supreme Court
 SCWC-30186
 28-FEB-2014
 02:35 PM

 IN THE SUPREME COURT OF THE STATE OF HAWAI#I

 ---o0o---

 STATE OF HAWAI#I,
 Respondent/Plaintiff-Appellant,

 vs.

 HERMAN DECOITE,
 Petitioner/Defendant-Appellee.

 SCWC-30186

 CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
 (ICA NO. 30186; FC-CR NO. 09-1-0127(4))

 FEBRUARY 28, 2014

 RECKTENWALD, C.J., NAKAYAMA, AND McKENNA, JJ.,
 WITH ACOBA, J., CONCURRING SEPARATELY,
 AND POLLACK, J., DISSENTING SEPARATELY

 OPINION OF THE COURT BY NAKAYAMA, J.

 On application for writ of certiorari, Petitioner-

Defendant Herman Decoite (Decoite) asks us to determine whether

Abuse of Family or Household Member, HRS § 709-906(1), can be

charged as a “continuing course of conduct” offense. On narrower
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

grounds, we hold that an alleged two-year period of domestic

abuse could not be charged on a continuing course of conduct

theory. Accordingly, we reverse the Intermediate Court of

Appeals’s (ICA) judgment on appeal and affirm the Circuit Court

of the Second Circuit’s (family court) order dismissing the

State’s complaint without prejudice.

 I. BACKGROUND

 This case arises out of alleged acts of domestic abuse

that Decoite committed against his former girlfriend over the

course of their five-year relationship. On April 3, 2009, the

State filed a misdemeanor complaint against Decoite, charging him

with one count of abuse of a family or household member (domestic

abuse) pursuant to Hawai#i Revised Statutes (HRS) § 709-906

(Supp. 2006).1 The complaint stated in relevant part: “during or

about the period between February 1, 2005, through June 1, 2007,

inclusive, as a continuing course of conduct, . . . Herman

Decoite did intentionally, knowingly or recklessly engage in and

cause physical abuse of a family or household member[.]”

 Decoite requested discovery, and the State produced

police reports of two incidents that occurred on November 29,

2006, and March 13, 2007, respectively. Decoite then filed a

 1
 HRS § 709-906(1) provided then as it does now: “It shall be
unlawful for any person, singly or in concert, to physically abuse a family or
household member[.]”

 2
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

motion to dismiss the State’s complaint in the family court.2

Decoite argued that the domestic abuse statute does not permit

charging domestic abuse as a continuous crime, and also that the

only incidents of alleged domestic abuse produced in discovery

fell outside of the applicable two-year statute of limitations.

The State responded that the domestic abuse statute punishes

“physical abuse,” and that because physical abuse can extend

beyond isolated moments, it may be charged on a theory of

continuing conduct. The State further argued that its complaint

against Decoite was not time barred because it had alleged a

continuing course of conduct that ended within the two-year

statute of limitations.

 The family court concluded that domestic abuse cannot

be charged on a continuous conduct theory, and issued an order

dismissing the State’s complaint without prejudice. On appeal,

the ICA reversed, holding that in some cases domestic abuse may

be charged as a continuous offense. We granted Decoite’s

application for writ of certiorari to resolve this issue as a

matter of first impression.

 II. STANDARDS OF REVIEW

A. Conclusions of Law

 Conclusions of law are reviewed de novo under the

 2
 The Honorable Richard T. Bissen, Jr. presided.

 3
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

right/wrong standard. Chun v. Bd. of Trs. of Emps.’ Ret. Sys. of

Haw., 106 Hawai#i 416, 431, 106 P.3d 339, 354 (2005).

B. Statutory Interpretation

 When interpreting a statute, this court follows several

well established canons of interpretation.
 “[O]ur foremost obligation is to ascertain and give effect
 to the intention of the legislature, which is obtained
 primarily from the language contained in the statute[s]”
 themselves. Mathewson v. Aloha Airlines, Inc., 82 Hawai#i
 57, 71, 919 P.2d 969, 983 (1996) (citation and quotation
 signals omitted). Second, “[l]aws in pari materia, or upon
 the same subject matter, shall be construed with reference
 to each other. What is clear in one statute may be called
 in aid to explain what is doubtful in another.” HRS § 1–16
 (1993); Richardson v. City and County of Honolulu, 76
 Hawai#i 46, 55, 868 P.2d 1193, 1202 (1994) (citation
 omitted). And, third, “[t]he legislature is presumed not to
 intend an absurd result, and legislation will be construed
 to avoid, if possible, inconsistency, contradiction[,] and
 illogicality.” State v. Malufau, 80 Hawai#i 126, 137, 906
 P.2d 612, 623 (1995) (citation and internal quotation marks
 omitted).

State v. Arceo, 84 Hawai#i 1, 19, 928 P.2d 843, 861 (1996) (some

citations omitted).

 III. DISCUSSION

A. Domestic abuse cannot be charged as a continuing conduct
offense based on discrete abusive transactions that occurred over
a two-year period

 The conduct element of the domestic abuse statute

states in relevant part: “It shall be unlawful for any person

. . . to physically abuse a family or household member[.]” HRS §

709-906(1) (emphasis added). The narrow issue of this case is

whether that conduct, “to physically abuse,” permits the State to

 4
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

charge two temporally discrete instances of domestic abuse on a

continuous course of conduct theory. The State argues that

abusive domestic relationships are defined by a cycle of violence

that is motivated by the abuser’s singular desire for power and

control. Thus, the State would have us hold that temporally

discrete acts of abuse can all be linked to one continuous

criminal impulse that forms the basis of one crime. However, HRS

§ 709-906(1) criminalizes “physical abuse,” which is conduct that

is necessarily discrete and episodic. In fact, the discrete

nature of the actus reus of domestic abuse is a crucial element

of the statutory scheme’s graduated penalty structure, which is

specifically tailored to punish repeated acts of abuse separately

and with increasing severity. Accordingly, we hold that HRS §

709-906(1) does not permit charging temporally discrete episodes

of domestic abuse that occurred over a two-year period as a

continuous course of conduct offense.3

 The test to determine whether a crime may be charged on

a continuous conduct theory is whether the language, structure,

and purpose of the statute reveals a legislative intent to

criminalize continuing conduct. See HRS § 701-108(4) (supp.

2006) (“An offense is committed either when every element occurs,

 3
 However, a single violent transaction comprised of, for example,
several punches, may constitute one continuous episode of domestic abuse. The
episode terminates when the perpetrator’s physically abusive impulse ends.

 5
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

or, if a legislative purpose to prohibit a continuing course of

conduct plainly appears, at the time when the course of conduct.

. . is terminated.”); see also Arceo, 84 Hawai#i at 19, 928 P.2d

at 861 (stating that an offense may be deemed continuous if it is

statutorily defined as an uninterrupted and continuing course of

conduct, or manifests a plain legislative purpose to be treated

as such, or both). Additionally, a crime may only be charged on

the theory of continuing conduct if the statute actually

prohibits conduct that may be deemed continuous. See State v.

Rabago, 103 Hawai#i 236, 253, 81 P.3d 1151, 1168 (2003)

(rejecting the legislature’s attempt to define the continuing

sexual abuse of a minor as a continuous offense because the actus

reus of the statute was actually targeting a series of

necessarily discrete criminal acts).

 This court has defined a continuous offense as “a

continuous, unlawful act or series of acts set on foot by a

single impulse and operated by an unintermittent force, however

long a time it may occupy[.]” Arceo, 84 Hawai#i at 18, 928 P.2d

at 860 (quoting State v. Temple, 65 Haw. 261, 267 n.6, 650 P.2d

1358, 1362 n.6 (1982)). “The test to determine whether [a]

defendant intended to commit more than one offense in the course

of a criminal episode is whether the evidence discloses one

general intent or discloses separate and distinct intents.”

 6
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

State v. Castro, 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988)

(citations omitted). “If there is but one intention, one general

impulse, and one plan, there is but one offense.” Id.

 We first applied this rule in State v. Martin, 62 Haw.

364, 369, 616 P.2d 193, 197 (1980), where we held that first

degree theft could constitute a continuous offense. There, the

defendant periodically filed fraudulent public assistance forms

for a six-year period in order to obtain welfare disbursements

from the State. Id. at 366, 616 P.2d at 195-96. We held that

the defendant had committed a continuing offense because each

fraudulent transaction was the continuation of a single and

uninterrupted criminal impulse. Id. at 369, 616 P.2d at 197 (“We

do not view each filing by defendant of a statement of facts

supporting continued eligibility as necessarily constituting a

new offense, since all statements were identical[.]”); see also

Temple, 65 Haw. at 267, 650 P.2d at 1362 (holding that theft of a

firearm was a continuous offense because the conduct element of

the theft statute specifically criminalized the ongoing act of

“retaining” stolen property); State v. Kealoha, 95 Hawai#i 365,

376, 22 P.3d 1012, 1023 (App. 2000) (holding that manufacturing a

dangerous drug may be a single continuous offense because the

general character of “manufacturing” connotes an ongoing process

of various steps that are motivated by one uninterrupted

 7
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

impulse).

 We have also found continuing conduct in criminal

transactions that were temporally quite short. For example, in

State v. Rapoza, we held that attempted murder in the second

degree could constitute a continuing offense. 95 Hawai#i 321,

329, 22 P.3d 968, 976 (2001). There, Rapoza discharged a firearm

five to seven times in the span of a few seconds while pointing

it in the general direction of three complaining witnesses. Id.

at 323, 22 P.3d at 970. We stated: “As to any given complainant,

[Rapoza’s] conduct in discharging the firearm several times did

not amount to ‘separate and distinct culpable acts,’ but rather

betokened ‘a continuous, unlawful . . . series of acts set on

foot by a single impulse and operated by an unintermittent

force[.]’” Id. at 329, 22 P.3d at 976 (quoting Arceo, 84 Hawai#i

at 18, 928 P.2d at 860).

 Turning to the statute at issue in this case, the

conduct element of HRS § 709-906(1) makes it a crime to

“physically abuse” a family or household member. We have defined

the term “physically abuse” for purposes of HRS § 709-906(1) as

follows: “To ‘physically abuse’ someone is to maltreat in such a

manner as to cause injury, hurt or damage to that person’s body.”

State v. Fields, 115 Hawai#i 503, 530, 168 P.3d 955, 982 (2007)

(citations and internal quotations omitted). Physical abuse, so

 8
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

defined, contemplates discrete episodes that are transitory in

nature, whether those events occur in isolation or in a series.

Cf. Temple, 65 Haw. at 267, 650 P.2d at 1362 (distinguishing the

non-continuous criminal acts “receive” and “dispose” from the

continuous act “retain,” because the former are transitory in

nature and of a brief duration). In that respect, “physical

abuse” is unlike “retaining” a stolen firearm, or “manufacturing”

methamphetamine, which involve ongoing processes.

 Furthermore, the touchstone characteristic of a

continuing offense is that it is motivated by a single

uninterrupted criminal impulse. See Martin, 62 Haw. at 369, 616

P.2d at 197. That domestic abuse may occur repetitively, as the

State claims, helps to illustrate that cyclic abuse is a non-

continuous crime. First, the State attached to its opposition to

Decoite’s motion to dismiss sample testimony from a domestic

violence expert. That testimony illustrates that in cases of

repetitive domestic abuse, many superseding impulses and

intermittent forces are at work:
 The cycle of violence . . . starts off when people first
 start dating and everything is good, and there’s no tension.
 And the relationship starts to progress, and something will
 begin to create tension.

 So one of the phases in the cycle of violence is called the
 tension building phase. So during this phase . . .
 something . . . starts to create tension and they begin to
 argue a little bit about it.

 And the tension continues to build. And in an abusive
 relationship, a final outburst will happen. And that’s what

 9
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

 we call the violent outburst phase. And after --
 immediately after the violence, typically the abuser is
 feeling very remorseful, and sorry, and apologizes, and
 tries to make repairs, make amends for the behavior. And
 that’s the apologetic, loving reconciliation phase, so that
 after the violence happens, the abuser is very sorry and
 conciliatory.

 . . . .

 And so they bond and become closer. And then we have the
 honeymoon phase, where everything is good and there is no
 tension, and life’s pretty good. And what happens is we go
 from the honeymoon phase -- and then there is always
 something that creates tension[.]

As the sample testimony shows, during the “loving reconciliation”

phase following a violent incident, a serial abuser typically

feels remorse and will try to repair the relationship. In other

words, the serial abuser’s malignant impulses are frequently

interrupted by the contrary impulse to set things right. This

characterization of serial abuse does not fit with the definition

of a continuing offense, which requires a single, uninterrupted

criminal impulse.4 See Martin, 62 Haw. at 369, 616 P.2d at 197.

 Second, statutory and case law make clear that the

single impulse underlying a continuing offense must be a criminal

impulse. See, e.g., Martin, 62 Haw. at 369, 616 P.2d at 197

(recognizing that repeated fraudulent filings were motivated by

 4
 Decoite argues that the ICA erred when it considered the State’s
proferred evidence. HRAP 10(a) states: “The record on appeal shall consist
of the trial court . . . record, as set out in Rule 4 of the Hawai#i Court
Records Rules[.]” Hawai#i Court Records Rules (HCRR) Rule 4 states: “The
record of each case . . . shall include: (a) all documents related to the
case, including correspondence, submitted for filing in any form[.]” Here,
all of the documents that Decoite claims should not be part of the record on
appeal were attached to the State’s opposition to Decoite’s motion to dismiss.
Thus, these documents were properly considered on appeal.

 10
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

the single criminal impulse to steal from the State); Temple, 65

Haw. at 267, 650 P.2d at 1362 (recognizing that retaining a

stolen firearm was motivated by the single criminal impulse to

steal the firearm); Kealoha, 95 Hawai#i at 376-78, 22 P.3d at

1023-25 (recognizing that the various steps of methamphetamine

production were all motivated by the single criminal impulse to

manufacture a dangerous drug). HRS § 701-104 (1993) specifically

states: “The provisions of [the HRS] cannot be extended by

analogy so as to create crimes not provided for herein[.]” If we

allowed a continuous crime to be founded on a non-criminal

impulse, then we would be extending the provisions of the penal

code by analogy in direct violation of HRS § 701-104.

 Here, the State has posited that a serial abuser is

motivated by a single continuous impulse, the desire for power

and control in a relationship. However, the actus reus of HRS §

709-906(1) is physical abuse. HRS § 709-906(1) does not

contemplate psychological abuse. Attempting to exert power and

control in a relationship, on its own, is not illegal. Thus,

although the desire for power and control merits no praise, it is

not a criminal impulse that can support charging domestic abuse

on a continuing conduct theory.

 Finally, the overarching structure of the domestic

abuse statute provides compelling evidence that the legislature

 11
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

intended repeated acts of abuse to be treated as separate crimes.

Specifically, the graduated penalty provisions of HRS § 709-906

provide:
 (5) Abuse of a family or household member [is a] . . .
 misdemeanor[] and the person shall be sentenced as follows:

 (a) For the first offense the person shall serve a
 minimum jail sentence of forty-eight hours; and

 (b) For a second offense that occurs within one year
 of the first conviction, the person shall be termed a
 “repeat offender” and serve a minimum jail sentence of
 thirty days.5

 . . . .

 (7) For a third or any subsequent offense that occurs within
 two years of a second or subsequent conviction, the offense
 shall be a class C felony.

This penalty structure is specifically tailored to address the

repetitive and cyclic nature of domestic abuse. It evinces a

legislative determination that multiple acts of abuse constitute

separate offenses that should be punished separately and with

increasing severity. The House Judiciary Committee made this

plain when it stated:
 The nature of domestic abuse is such that ongoing violence
 is not uncommon and, in fact, has the great likelihood of
 becoming more serious and increasing in frequency. Your
 Committee understands that uniform sanctions applied in a
 graduated way in response to these serious offenses will
 deliver a strong message to the offenders[.]

 5
 In State v. Dudoit, we held that “the repeat offender provision of
HRS § 709-906(5) applies to the commission of successive violations of HRS §
709-906 and not merely to successive convictions of such violations” and that
it “may be applied to offenses occurring on the same day.” 90 Hawai#i 262,
266, 274, 978 P.2d 700, 704, 712 (1999) (capitalization and quotations
omitted).

 12
 *** FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER ***

H. Stand. Comm. Rep. No. 20-92, in 1992 House Journal, at 906.

Charging multiple discrete acts of domestic abuse as a single

continuous crime, as the State did here, conflicts with the

domestic abuse statute’s graduated penalty structure.

 In sum, the family court properly dismissed the State’s

complaint because it defectively charged Decoite with domestic

abuse under a continuing course of conduct theory. As a matter

of law, an alleged two-year period of domestic abuse can never be

charged as a continuous conduct offense.6

 IV. CONCLUSION

 For the foregoing reasons, we reverse the ICA’s

judgment on appeal and affirm the family court’s order dismissing

the State’s complaint without prejudice.

Craig W. Jerome /s/ Mark E. Recktenwald
(Summer M.M. Kupau
with him on the briefs) /s/ Paula A. Nakayama
for petitioner
 /s/ Sabrina S. McKenna
Emlyn N. Higa
(Pamela Lundquist with
him on the briefs)
for respondent

 6
 Our holding does not prevent a criminal defendant from invoking
HRS § 701-109(1)(e) (1993) in an attempt to merge multiple counts of domestic
abuse that factually arise from a single, discrete criminal transaction. See
discussion supra at n.3.

 13